# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MULTIMEDIA TECHNOLOGIES PTE. LTD., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS INC. and <br> LG ELECTRONICS U.S.A., INC. <br><br> Defendants. | Civil Action No. 2:22-CV-00494-JRG-RSP <br><br> PUBLIC VERSION |

## LG ELECTRONICS INC. AND LG ELECTRONICS U.S.A., INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO DIRECT INFRINGEMENT

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1
II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................. 1
III. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 1
IV. LEGAL STANDARDS ............................................................................................. 5
V. ARGUMENT ........................................................................................................... 5
    A. Plaintiff Cannot Establish LG Itself Directly Infringes the Asserted Method Claims .................................................................................................. 5
    B. Plaintiff Cannot Establish Joint Infringement of Any Asserted Patent ................. 6
    C. Plaintiff Cannot Establish LG Directly Infringes the Asserted System Claims Based on Alleged Netflix and Prime Video Functionality ...................... 10
VI. CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
 797 F.3d 1020 (Fed. Cir. 2015) (en banc) ............................................................... 6, 7

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ....................................................................................................5

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
 631 F.3d 1279 (Fed. Cir. 2011) ..................................................................................7

*CTD Networks, LLC v. Google, LLC*,
 688 F. Supp. 3d 490 (W.D. Tex. 2023) ....................................................................11

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
 No. 6:15-CV-01038, 2016 WL 7666160 (E.D. Tex. 2016) ......................................8

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010) ................................................................................11

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
 946 F.2d 821 (Fed. Cir. 1991) ..................................................................................11

*INVT SPE LLC v. Int'l Trade Comm'n*,
 46 F.4th 1361 (Fed. Cir. 2022) ........................................................................... 11, 12

*Joy Techs., Inc. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) ........................................................................................5

*Lone Star Tech. Innovs., LLC v. ASUSTeK Computer Inc.*,
 No. 6:19-CV-00059-RWS, 2020 WL 6803249 (E.D. Tex. Jan. 14, 2020) ...............9

*Lyda v. CBS Corp.*,
 838 F.3d 1279 (Fed. Cir. 2016) ..................................................................................7

*Lyda v. CBS Corp.*,
 838 F.3d 1331 (Fed. Cir. 2016) ..................................................................................6

*Mirror Worlds, LLC v. Apple, Inc.*,
 784 F. Supp. 2d 703 (E.D. Tex. 2011), aff'd, 692 F.3d 1351 (Fed. Cir. 2012) .........5

*Muniauction, Inc. v. Thomson Corp.*,
 532 F.3d 1318 (Fed. Cir. 2008) ..................................................................................8

*Synchronoss Techs. v. Dropbox, Inc.*,
  987 F.3d 1358 (Fed. Cir. 2021) ..................................................................................11

*Uniloc USA, Inc. v. Samsung Electronics America, Inc.*,
  Case No. 2:17-cv-00651-JRG, Dkt. No. 233 (E.D. Texas May 28, 2019)
  (Gilstrap, J.) ............................................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................................5

## I. INTRODUCTION

Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc., (collectively, "LG") hereby move for partial summary judgment of no direct infringement based on certain theories advanced by Multimedia Technologies Pte. Ltd. ("MMT"). As described herein, MMT asserts a host of system and method claims across ten patents. While MMT advances varying direct infringement theories for different claims and patents, it advances several direct infringement theories that are unsupported by facts or contrary to law. Discovery has concluded, and no material disputed facts exist for these theories. As such, LG respectfully requests that the Court grant summary judgment of no direct infringement as to the theories addressed below.

## II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether the Court should grant summary judgment that LG itself has not directly infringed the Asserted Method Claims.

2. Whether the Court should grant summary judgment that LG has not jointly infringed any Asserted Patent with end users.

3. Whether the Court should grant summary judgment that LG does not directly infringe the Asserted System Claims based on purported functionality associated with Netflix and Prime Video applications that are installed, if at all, by a user after sale of the accused TVs by LG.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

MMT presently asserts infringement of ten patents: U.S. Patent Nos. 9,055,254 ("'254 Patent"); 9,237,291 ("'291 Patent"), 9,578,384 ("'384 Patent"), 10,419,805 ("'805 Patent"), 9,426,527 ("'527 Patent"), 9,185,325 ("'325 Patent"), 9,247,174 ("'174 Patent"), 9,510,040 ("'040 Patent"), 9,820,003 ("'003 Patent"), and 9,055,255 ("'255 Patent") (collectively, "Asserted Patents"). From these Asserted Patents, MMT asserts the "Asserted Method Claims" and

"Asserted System Claims" identified below:[1]

| U.S. Patent No. | Asserted Method Claim(s) | Asserted System Claim(s) |
|---|---|---|
| 9,055,254 ("'254 Patent") | - | **8** |
| 9,237,291 ("'291 Patent") | - | **9**, 10 |
| 9,247,174 ("'174 Patent") | **1**, 4 | **10**, 11 |
| 9,510,040 ("'040 Patent") | **1**, 2 | **21** |
| 9,578,384 ("'384 Patent") | **1**, 4, 6, 7 | - |
| 9,820,003 ("'003 Patent") | - | **9**, 10, 13, 16 |
| 10,419,805 ("'805 Patent") | - | **10** |
| 9,426,527 ("'527 Patent") | - | **7** |
| 9,055,255 ("'255 Patent") | **1**, 6 | **19** |
| 9,185,325 ("'325 Patent") | **1** | - |

*See* Ex. A (S. Desai email dated 7/15/2024); Ex. B, Asserted Claim Appendix.

**As to the Asserted Method Claims**, MMT relies on two direct infringement theories: **(1)** "that every step of the Asserted Method Claims has been performed in the United States, at least **by users** of the Accused Instrumentalities", Ex. C, Rosenberg Rpt., ¶ 148 (emphasis added); and **(2)** that LG and users have **jointly infringed** the Asserted Method Claims, and LG is responsible for the alleged joint infringement, "[t]o the extent that any of the steps . . . are not directly performed by LG in the United States but rather performed by users of the Accused Instrumentalities." *Id.*, ¶ 145.

During deposition, MMT's infringement expert, Dr. Rosenberg, confirmed that he did "not cite[] any evidence of LG itself actually performing the method steps." Ex. D, Rosenberg Tr. at 161:13-17. In fact, Dr. Rosenberg admittedly did "not perform[] an analysis of which user, if any, is performing individual method steps of the asserted method claims," including "which, if any, steps would be performed by LG versus which, if any, steps would be performed by a user of the TV." *Id.* at 162:16-163:3; *see also id.* at 163:23-164:5 (same).

---

[1] The ten remaining patents are collectively referred to as the "Asserted Patents." The independent claims are emphasized in the table. Further, all exhibits hereto are excerpted to the cited portions.

2

For alleged joint infringement, in addition to admittedly not analyzing who performs the individual method steps, Dr. Rosenberg also testified that he did not "offer[] any opinions that LG acts through an agent to perform any of the method steps" or that "LG contracts with another entity or individual to perform method steps." *Id.* at 164:13-21. Thus, Dr. Rosenberg and MMT rely entirely on the theory that LG "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a claimed method and establishes the manner or timing of that performance." *See* Ex. C, Rosenberg Rpt., ¶¶ 144-147 (arguing that LG conditions benefits of the user interface on performing method steps and that its source code establishes the timing of performance of those steps). However, on this point, Dr. Rosenberg agreed that "[i]t's the user's choice on which functionality features they use," and LG does not control, for example, whether users use video-on-demand content like Netflix or Prime Video or "connect their TV to a coaxial connection." *See* Ex. D, Rosenberg Tr. at 141:25-142:9, 143:7-21, 144:23-25. He also agreed that he has no knowledge of whether "LG has any influence on how Netflix designs its user interface and implementations," and that "as far as [he] know[s] LG could have no influence on how Netflix designs and implements its inter- -- user interface." *Id.* at 125:23-128:15.

**As to the Asserted System Claims**, MMT asserts direct infringement based on LG's alleged "sale and offer for sale" of the accused LG TVs. Ex. C, Rosenberg Rpt., ¶ 143; Ex. D, Rosenberg Tr. at 156:9-20, 158:5-10. For each Asserted System Claim of the '254,'291, '174, '040,'805, and '527 Patents, MMT's infringement allegations rely, in part or in whole, on alleged functionality and features associated with use of the Netflix and Prime Video applications. *See* Dkt. Nos. 110-34 at 22 & 27-28 ('254 Patent); Dkt. 110-41 at 11, 16, 21 ('291 Patent); Dkt. 110-48 at 15, 22-23, 28-29, 35 ('174 Patent); Dkt. 111-4 at 6, 9, 14-15, 32 ('040 Patent); Dkt. 111-25 at 11, 16 ('805 Patent); Dkt. 111-32 at 4-17, 20-37 ('527 Patent).

Despite characterizing the Netflix and Prime Video applications as "pre-installed," Dr. Rosenberg agreed that when a user first sets up an accused LG TV, there is no Prime Video or Netflix application displayed on the TV's home screen. Ex. D, Rosenberg Tr. at 131:11-132:3. He also confirmed that one is "not able to access applications to try to download Netflix or Prime without connecting to the Internet." *Id.* at 132:5-16. Dr. Rosenberg further testified that after the user connects to the Internet, an "icon" appeared on the TV's home screen, and that clicking that "icon" causes an "update" to take place. *Id.* at 135:3-15. His report provided exemplary images of the "updates" that occur when a user tries to access the applications, demonstrating that the updates were 157.11 MB for Netflix and 33.82 MB for Prime Video:

 

Ex. C, Rosenberg Rpt., ¶¶ 155, 158. Dr. Rosenberg confirmed that one "cannot access Netflix without performing this update that we're seeing on the TV." Ex. D, Rosenberg Tr. at 136:19-137:1. He also agreed that these updates "download[] additional executable code or program to the TV that was not there before." *Id.* at 138:7-14.

As to the content of the downloaded code and any allegedly pre-exiting code, Dr. Rosenberg testified he did not analyze what code "was on the TV prior to this update versus after" and did not "know one way or the other" whether the TVs could even run the Netflix and Prime Video applications without the updates because "I didn't conduct that analysis." *Id.* at 138:15-139:1. However, LG's experts *did* investigate this issue and confirmed that these updates download "the SDK (software development kit) code" that is necessary to run the applications.

4

Ex. E, Schonfeld Report, ¶ 278; *see also* Ex. F, Terveen Report, ¶ 54 ("[A]t the time of the sale, there is no Netflix or Prime Video icon and there is no SDK code for these applications installed on the TV.").

IV. **LEGAL STANDARDS**

Summary judgment should be granted if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Summary judgment is proper if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable direct infringement standards are discussed below.

V. **ARGUMENT**

 A. **Plaintiff Cannot Establish LG Itself Directly Infringes the Asserted Method Claims**

"The law is clear that the sale or offer for sale is insufficient to prove direct infringement of a method claim." *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 713 (E.D. Tex. 2011), aff'd, 692 F.3d 1351 (Fed. Cir. 2012). Rather, "[a] method claim is directly infringed only by one practicing the patented method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed. Cir. 1993) (emphasis omitted); *see also* Ex. G, *Uniloc USA, Inc. v. Samsung Electronics America, Inc.*, Case No. 2:17-cv-00651-JRG, Dkt. No. 233 at 62-23 (E.D. Texas May 28, 2019) (Gilstrap, J.) ("A device sitting by itself does not infringe a method claim. But a method claim – there must be performance of each and every step of the method claim."). Here, the only direct infringement theories that MMT has even arguably developed are premised on: **(1)** circumstantial evidence that users of LG's TVs allegedly perform the claimed method steps; and **(2)** LG and users jointly infringe the Asserted Method Claims. Ex. C, Rosenberg Rpt., ¶¶ 145-148. As to LG itself, Dr. Rosenberg freely admits that he has marshalled no evidence of LG performing any step of the

5

Asserted Method Claims:

> Q. In your report, you have not cited any evidence of LG itself actually performing the method steps, right?
>
> …
>
> A. No, I have not.

Ex. D, Rosenberg Tr. 161:13-17 (objection omitted); *see also id.* at 162:16-163:3, 163:23-164:5 (Dr. Rosenberg admitting he did not perform any analysis at all of which entity performs individual method steps). The remaining record is likewise devoid of any evidence of LG itself performing any method steps. Accordingly, MMT cannot establish that LG itself has directly infringed the Asserted Method Claims, and summary judgment should be granted. *See* Ex. G, *Uniloc* Dkt. No. 233 at 63 ("[A]s to Plaintiffs' assertions of direct infringement against Samsung, the Court finds that there is no sufficient summary judgment evidence that Samsung itself performs each and every step of the method claims asserted in this case in the United States. And I'm going to grant summary judgment for the Defendants on Plaintiffs' direct infringement claims.").

### B. Plaintiff Cannot Establish Joint Infringement of Any Asserted Patent

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). "To prove joint infringement, where multiple actors are involved in practicing the claim steps, the patent owner must show that the acts of one party are attributable to the other such that a single entity is responsible for the infringement." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1338–39 (Fed. Cir. 2016). The Federal Circuit "has held that an entity will be responsible for others' performance of method steps in two circumstances: '(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.'" *Id.* (quoting *Akamai*, 797 F.3d at 1022). Direction and control may be found "when

6

an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method **and** establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023 (emphasis added).

As discussed in the Statement of Undisputed Material Facts above, Dr. Rosenberg admits that he is not presenting any joint infringement theory based on an alleged "joint enterprise" or LG "contracting" with users. Ex. D, Rosenberg Tr. at 164:13-21. Instead, as articulated by Dr. Rosenberg, MMT's joint infringement theories are premised on LG's purported "direction and control" of TV users:

> To the extent that any of the steps of the [Asserted Method Claims] are not directly performed by LG in the United States but rather performed by users of the Accused Instrumentalities, LG controls the performance of such users of the Accused Instrumentalities by conditioning the receipt of a benefit upon the performance of these steps and establishes the manner and/or timing of that performance.

Ex. C, Rosenberg Rpt., ¶ 144. However, Dr. Rosenberg's "analysis" is vague, generalized, and entirely devoid of any evidence establishing LG's direction and control of the *specific method steps* claimed in the Asserted Method Claims. MMT alleges infringement of at least eleven distinct method claims, with some having as many as eight or more discrete method steps. Yet, Dr. Rosenberg relies on the same high-level and generic assertions of direction and control as applying equally to all Asserted Patents containing method claims. *See id.*, ¶¶ 145-147. Summary judgment should be granted as to all Asserted Patents[2] for at least three independent reasons.

---

[2] It is unclear whether Multimedia is asserting joint infringement of the Asserted System Claims as well. For example, Dr. Rosenberg states "I understand that system claims can be directly infringed by the collective actions of multiple entities . . . ." Ex. C, Rosenberg Rpt., ¶ 44. If so, Multimedia has failed to plausibly develop this theory, or explain how it is consistent with Federal Circuit law. *See See Lyda v. CBS Corp.*, 838 F.3d 1279, 1284 (Fed. Cir. 2016) (stating that Federal Circuit "cases have applied joint infringement to method claims and not system claims" and citing *Centillion Data Sys. , LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011) as "analyzing system claims under a different framework"). For avoidance of doubt, summary judgment of no joint infringement should be granted on all Asserted Patents.

First, MMT cannot establish joint infringement because Dr. Rosenberg admittedly did "not perform[] an analysis of which user, if any, is performing individual method steps of the asserted method claims." Ex. D, Rosenberg Tr. at 162:16-20. Dr. Rosenberg confirmed multiple times that he did not analyze "which, if any, steps would be performed by LG versus which, if any, steps would be performed by a user of the TV." *Id.* at 162:16-163:3; *see also id.* at 163:23-164:5 (same). Thus, MMT's "joint infringement" theory is nothing more than a boilerplate reservation of rights that is unsupported by factual evidence or analysis. The Court has found such boilerplate reservations of rights to be is insufficient in other contexts. *See, e.g., Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6:15-CV-01038, 2016 WL 7666160, at *3 (E.D. Tex. 2016) (striking boiler-plate doctrine of equivalents contentions). The same logic applies here.

Second, MMT cannot establish that LG directs or controls how users of its TVs operate them. Dr. Rosenberg's only alleged evidence of direction and control are LG's public facing website, YouTube channel, and user manuals. Ex. C, Rosenberg Rpt., ¶ 146. However, the law is clear that these types of generalized "instructions" are not enough to sustain an allegation of direction and control. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) ("That [Defendant] controls access to its system and instructs bidders on its use is not sufficient to incur liability for direct infringement."). Moreover, Dr. Rosenberg makes no attempt to tie any of the public facing websites and materials to the performance of the steps of the Asserted Method Claims. He also freely admits "[i]t's the user's choice on which functionality features they use." *See* Ex. D, Rosenberg Tr. at 144:23-25. And when pressed on his specific infringement theories relating to Netflix, Prime Video, LG Channels, and Live TV, he was forced to admit that "LG does not control whether a user logs into their account on Netflix and Prime Video" or "connect their TV to a coaxial connection." *Id.* at 141:25-142:9, 143:7-21. He also acknowledged

8

that "LG's TVs have many additional features separate and apart from the LG Channels, Netflix and Prime Video," including video-on-demand services like "Disney, Hulu, Sling, Max, [Vudu]" as well as "additional functionality beyond that of just video and demand streaming" that he offers no infringement opinions on. *Id.* at 145:9-147:23. Simply put, LG's TVs have many uses and LG does not direct or control how any of them are used.

Dr. Rosenberg's allegations regarding conditioning the receipt of a benefit on the performance of a claimed method are equally deficient. Dr. Rosenberg alleges that "LG conditions the receipt of benefits associated with *the user interface*" on performance of the claimed methods because the Asserted Method Claims purportedly improve navigation, organization, and presentation of information *on the interface*. Ex. C, Rosenberg Rpt., ¶ 147 (emphasis added). This argument should be rejected because it erroneously conflates the alleged "benefit" with the method step itself. For example, certain claims recite steps for displaying information regarding applications and content, which is the same as Dr. Rosenberg's alleged conditioned benefit of "improved access to information regarding applications and content." *See id.* Under Dr. Rosenberg's logic, the performance of any method step would inherently provide a benefit that is conditioned on the step, which is insufficient to sustain a joint infringement theory. *See Lone Star Tech. Innovs., LLC v. ASUSTeK Computer Inc.*, No. 6:19-CV-00059-RWS, 2020 WL 6803249, at *7 (E.D. Tex. Jan. 14, 2020) ("ASUSTeK has provided no factual support to show ASUSTeK imposes any 'conditions.' It alleges that its customers receive a benefit when using the ASUSTeK Monitor in an infringing manner, pointing to its claim charts, but provides no support for ASUSTeK conditioning that benefit on infringement."). Moreover, Dr. Rosenberg's infringement theories rely largely on functionality within Netflix and Prime Video. Yet, he admits he has no knowledge of whether "LG has any influence on how Netflix designs its user interface and

implementations," and "as far as [he] know[s] LG could have no influence on how Netflix designs and implements its inter- -- user interface." Ex. D, Rosenberg Tr. at 125:23-128:15. MMT cannot plausibly contend LG directs and controls the alleged performance of Asserted Method Claims.

Third, MMT cannot establish that LG establishes the manner or timing of performance of the claimed method steps. Dr. Rosenberg's only alleged evidence relating to this factor is that "the source code for webOS (the operating system for the Accused Instrumentalities), which is developed by LG, establishes the manner and/or timing of the performance of the claimed steps." Ex. C, Rosenberg Rpt., ¶ 147. Again, this argument misses the mark. The source code for webOS has nothing to do with the timing of the performance of the claimed method steps. As Dr. Rosenberg testified, "[i]t's the user's choice on which functionality features they use." *See* Ex. D, Rosenberg Tr. at 144:23-25. MMT cannot plausibly contend that LG establishes the manner and timing when users perform the claimed method steps. Moreover, MMT's infringement theories rely largely on functionality from within the Netflix and Prime Video applications, and Dr. Rosenberg admits he has no evidence or knowledge demonstrating "LG has any influence on how Netflix designs its user interface and implementations." *Id.* at 125:23-128:15.

For all these reasons, MMT cannot establish that LG has the requisite level of direction and control over TV users to support joint infringement, and summary judgment of no joint infringement should be granted.

    **C.    Plaintiff Cannot Establish LG Directly Infringes the Asserted System Claims Based on Alleged Netflix and Prime Video Functionality**

MMT's direct infringement theories for the Asserted System Claims are premised on LG's alleged "sale and offer to sell of the accused instrumentalities." Ex. C, Rosenberg Rpt., ¶ 143; Ex. D, Rosenberg Tr. at 156:9-20, 158:5-10. The law is clear that "infringement by 'making' or 'selling' a system requires a complete infringing system: 'one may not be held liable under § 271(a)

for 'making' or 'selling' less than a complete invention.'" *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 501 (W.D. Tex. 2023) (quoting *Synchronoss Techs. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed. Cir. 2021)). Further, "to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991))). "For infringement purposes, a computer-implemented claim drawn to a functional capability requires some showing that the accused computer-implemented device is programmed or otherwise configured, ***without modification***, to perform the claimed function when in operation." *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1365 (Fed. Cir. 2022) (emphasis added).

As described above, for each of the '254, '291, '174, '040, '805, and '527 Patents, MMT's infringement allegations rely, in whole or in part, on alleged functionality and features associated with use of the Netflix and Prime Video applications. *See supra* § III. However, MMT cannot plausibly contend that LG's TVs as sold include the allegedly infringing functionality or are even "'capable of operating' in the described mode." *Finjan*, 626 F.3d at 1204. While MMT attempts to characterize the Netflix and Prime Video applications as being "pre-installed," the undisputed evidence demonstrates that LG's TVs as sold do not contain the necessary code for running the Netflix and Prime Video applications, let alone for accessing the video-on-demand content on Netflix or Prime Video that MMT's allegations rely on. *See supra* § III.

For example, the testimony set forth in the Statement of Undisputed Material Facts above demonstrates that MMT does not dispute that: (1) the Netflix and Prime Video applications are not accessible without the user connecting the TV to the Internet, *see* Ex. D, Rosenberg Tr. at 131:11-132:16; (2) the first time the applications are accessed, the user must download files of 157.11 MB

11

for Netflix and 33.82 MB for Prime Video, *id.* at 136:19-137:1, 138:7-10; *see also* Ex. C, Rosenberg Rpt., ¶¶ 155, 158; (3) these files for download include executable code that is not on the TV at the time of sale, Ex. D, Rosenberg Tr. at 138:7-14; (4) there is no evidence suggesting that that LG's TVs can run these applications without this executable code, *id.* at 138:15-140:1; and (5) the downloaded files in fact provide SDK software necessary for running the applications. Ex. E, Schonfeld Report, ¶ 278; Ex. F, Terveen Report, ¶ 54. In other words, even if MMT could plausibly demonstrate each of the Asserted System Claims are "computer-implemented claim[s] drawn to a functional capability"—a point which LG does not concede—that is immaterial to the analysis because MMT cannot show that "the accused computer-implemented device is programmed or otherwise configured, ***without modification***, to perform the claimed function when in operation." *INVT SPE*, 46 F.4th at 1365 (emphasis added).

Moreover, once the necessary code is downloaded, a user must still log into their own Netflix and Prime Video account (which Dr. Rosenberg admits LG does not control) to get to the features and functionality that MMT accuses of infringement (*e.g.*, user interfaces) on which Dr. Rosenberg admits he has no knowledge of whether LG has any influence or control. Rosenberg Tr. at 141:25-142:9, 125:23-128:15. Because the accused LG TVs are not capable of running Netflix and Prime Video applications as sold, LG respectfully submits that the Court should grant summary judgment that LG has not directly infringed the Asserted System Claims based on alleged Netflix and Prime Video functionality.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, LGE respectfully requests that the Court grant summary judgement that: (1) LG itself has not directly infringed the Asserted Method Claims; (2) LG and its end users have not jointly infringed the Asserted Patents; and (3) LG has not directly infringed the Asserted System Claims based on any alleged functionality of Netflix and Prime Video.

| | |
|---|---|
| Dated: August 20, 2024 | */s/ Melissa R. Smith* |

                                                      Melissa R. Smith
Texas Bar No. 24001351
**Gillam & Smith LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

James Travis Underwood
Texas Bar No. 24102587
**Gillam & Smith LLP**
102 N College, Suite 800
Tyler, TX 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
travis@gillamsmithlaw.com

Susan Stradley
Texas Bar No. 24117102
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana St., Suite 4000
Houston, TX 77002-5006
Telephone: 713.890.5151
Facsimile: 713.890.5001
susan.stradley@morganlewis.com

Jason C. White*
Illinois Bar No. 6238352
Nicholas A. Restauri*
Illinois Bar No. 6309995
Michael T. Sikora (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Suite 2800
Chicago, Illinois 60606
Telephone: 312.324.1000
Facsimile: 312.324.1001
jason.white@morganlewis.com
nicholas.restauri@morganlewis.com
michael.sikora@morganlewis.com

Collin W. Park (Admitted *pro hac vice*)
Natalie A. Bennett*
Illinois Bar No. 6304611
Kevin J. Spinella (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**

1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
collin.park@morganlewis.com
natalie.bennett@morganlewis.com
kevin.spinella@morganlewis.com

Jason E. Gettleman (admitted *pro hac vice*)
Austin L. Zuck (admitted *pro hac vice*)
Brooke Quesinberry (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 843-4000
Facsimile: (650) 843-4001
jason.gettleman@morganlewis.com
austin.zuck@morganlewis.com
brooke.quesinberry@morganlewis.com

*Admitted to practice

*Attorneys for Defendants LG Electronics Inc.
and LG Electronics USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 20, 2024, a true and correct copy of the foregoing response was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Melissa R. Smith*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Melissa R. Smith*