IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MULTIMEDIA TECHNOLOGIES PTE. LTD., | § § § § | |
| *Plaintiff*, | § | |
| v. | § § | Case No. 2:22-cv-00494-JRG-RSP |
| LG ELECTRONICS INC. and LG ELECTRONICS USA, INC., | § § § § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike the Infringement Report of Plaintiff's expert Dr. Craig Rosenberg filed by Defendants LG Electronics Inc. and LG Electronics USA, Inc.. **Dkt. No. 110**. For the reasons discussed below, the Court **DENIES** the Motion.

### I. BACKGROUND

Plaintiff Multimedia asserts (as is relevant to the instant Motion) that Defendants infringe ten of its patents: U.S. Patent Nos. 9,055,254; 9,237,291; 9,247,174; 9,510,040; 9,578,384; 9,820,003; 10,419,805; 9,426,527; 9,055,255; and 9,185,325. *See* Dkt. No.1 at 1; *see also* Dkt No. 110 at 1-2.

On June 5, 2023, Plaintiff served its Infringement Contentions. Dkt. No. 110 at 2. Plaintiff subsequently amended its contentions twice, with the amended Infringement Contentions being served on November 11, 2023 and March 21, 2024 respectively. *Id.* at 2-3.

On July 1, 2024, Plaintiff served its infringement expert's Infringement Report. Dkt. No. 110-33 at 102. On July 26, 2024, Defendants filed the instant Motion to Strike. Dkt. No. 110.

## II.      LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting FED. R. EVID. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

When information is publicly available, the Patent Rules require plaintiffs to set forth specific theories of infringement at the outset of the case. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F.Supp.2d 558, 560 (E.D. Tex. 2005). Patent Rule 3-1 requires plaintiffs to state "specific theories of infringement" in the Infringement Contentions. *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754, 755 (E.D. Tex. 2004). Compliance with Patent Rule 3-1 demands infringement contentions that describe "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *Connectel, LLC v. Cisco Systems, Inc.*, 391 F.Supp.2d 526, 527–28 (E.D. Tex. 2005) (quoting *STMicroelectronics, Inc.*, 308 F.Supp.2d at 755). Before bringing suit, plaintiffs are expected to rigorously analyze all publicly available information, and early in the case plaintiffs must explain its infringement theories in detail. *See id.* at 528.

However, a plaintiff need not provide evidence for "every possible manifestation of the alleged infringement" in its infringement contentions. *Orion IP, LLC v. Staples, Inc.*, Case No. 2:06-cv-00297-LED, Dkt. No. 316, 407 F. Supp. 2d 815, at *3 (E.D. Tex. 2006). A plaintiff need only provide "representative examples of the alleged infringement so as to give defendants fair notice of infringement beyond that which is provided by the mere language of the patent claims themselves." *Id.*

### III.   ANALYSIS

Defendants argue that the Court should strike numerous portions of Dr. Rosenberg's Infringement Report on the basis that the arguments found there amount to new infringement theories not previously disclosed in Plaintiff's Infringement Contentions. *See generally* Dkt. No. 110. Therefore, Defendants assert, Plaintiff did not provide them with proper notice of the ostensibly new theories.

**A. Doctrine of Equivalents Arguments**

Defendants first argue that Dr. Rosenberg's Doctrine of Equivalents arguments should be stricken for violating Local Rule P.R. 3-1(d) (requiring Plaintiff to disclose "[w]hether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."). Specifically, they allege that the Infringement Report asserts, for the first time, infringement of the '527 Patent under DOE as to elements 7[g] and 7[h] (*Id.* at 5-6 (citing Exs. 31-37 to Dkt. No. 111)), but that Plaintiff's Infringement Contentions contained only a boilerplate assertion on DOE:

> Each limitation of each Asserted Claim is considered to be literally present in the Accused Instrumentalities. If any such limitation to any Asserted Claim is not found to be literally present, any such limitation is considered to be present under the Doctrine of Equivalents. Where applicable based on Multimedia's present

4

>understanding, specific support for application of the Doctrine of Equivalents is provided in the Claim Charts for each of the Asserted Patents.

Dkt. No. 110-4 at 5. Defendants contend that this is impermissible because a boilerplate reservation of DOE arguments in infringement contentions, standing alone, is not enough to support specific theories under DOE that later appear in expert reports. *See* Dkt. No. 110 at 5-6 (citing *Colucci v. Callaway Golf Co.*, 748 F. Supp. 2d 629, 632 (E.D. Tex. 2010)).

Plaintiff does not dispute this in its response, but argues that the timing of fact discovery is relevant to its diligence in disclosing the specific DOE-infringement theories at issue. Dkt. No. 120 at 12. Plaintiff contends that Dr. Rosenberg, in formulating his arguments, relied on deposition statements made by two of Defendants' 30(b)(6) designees, with those depositions taking place only six and twelve days prior to the deadline to serve the Report. *Id.*; *compare* Dkt. No. 34 at 3. Thus, Plaintiff argues, Defendants' failure to make deponents available earlier means that Plaintiff should not be faulted for not developing its DOE theories beyond boilerplate earlier. *See* Dkt. No. 120 at 12-13.

The Court is persuaded by Plaintiff's argument. As we have previously stated in *Godo Kaisha IP Bridge*, where a party does not receive evidence it needs to develop its DOE infringement theories, it may be deemed to have acted diligently notwithstanding falling short of the timeline in the local rules. *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-134-JRG-RSP, 2017 WL 2869331, at *2 (E.D. Tex. Apr. 27, 2017) (compiling precedent). Such is the case here: Dr. Rosenberg relied directly on deponents' statements in the formation of his DOE arguments on elements 7[g] and 7[h]. Dkt. No. 111-31 at 17-18. Accordingly, the Motion to Strike the DOE arguments as to elements 7[g] and 7[h] in the Rosenberg Infringement Report is **DENIED**.

5

Defendants also argue that ¶ 34 should be stricken because it "generically asserts that all Asserted Patents are infringed under DOE." Dkt. No. 110 at 5 (citing 110-33 at 13-14 (". . . it is my expert opinion that LG and the Accused Instrumentalities infringe (literally or under the doctrine of equivalents) . . . .)).

Plaintiff responds by pointing out that this is merely an introductory statement and that it goes on to say " . . . as I explain in detail below . . . ," meaning that the Report specifically points out whether the accused instrumentalities infringe literally or under DOE on an element-by-element basis. Dkt. No. 120 at 13 (citing 110-33 at 14).

The Court finds that Dr. Rosenberg does not, as Defendants incorrectly assert, state that all Asserted Patents are infringed under DOE; he states that they are infringed literally *or* under DOE. Further, he goes on to point out whether each element is infringed under the former or the latter. Accordingly, the Motion to Strike the DOE arguments as to ¶ 34 in the Rosenberg Infringement Report is **DENIED**.

### B. Television Remote Buttons Arguments

Defendants next assert that "newly-identified TV functionality associated with remote control buttons . . . were not previously identified or relied on for a particular, or in many cases any, limitation of the Asserted Patents," and, therefore, amount to new theories. Dkt. No. 110 at 6.

#### 1. "List," "Guide," and "OK" Buttons

Defendants first contend that the Report's arguments regarding the "List," "Guide," and "OK" buttons should be stricken. They assert that Plaintiff's Infringement Contentions only contemplate usage of "Home" or "Recents" buttons for certain limitations (*Id.* at 6-9), but that the

6

Report now contemplates the "List" and "Guide" buttons, along with the "OK"[1] button (*Id.* 110 at 6-8).

Plaintiff responds saying that the new information in Dr. Rosenberg's Report is "additional *evidence* of infringement," not a "new *theory*" of infringement. Dkt. No. 120 at 7 (emphasis in original). They go on to assert that Defendants were properly put on notice of these functionalities when Plaintiff alleged in its Infringement Contentions that "LG Smart Remotes comprise an *application center button* that, when selected, provides, by the television screen, displayed information regarding preinstalled and downloaded software applications . . . ." *See id.* at 7-8 (citing Dkt. No. 110-25 at 13 (emphasis added)). They continue by stating that use of the "Home" button was merely an exemplar of an application center button, but that there were other potential buttons/combinations. *See id.* at 8. Finally, they argue that the "List" and "Guide" buttons are substantially similar to this exemplar. *See id.* at 8-9.

Defendants reply that the new buttons in the Report are "markedly different" than those in the Contentions, and that even though Plaintiff identified "***some*** buttons on a remote does not give [its] expert *carte blanche* to later accuse ***any*** button on the remote." Dkt. No. 141 at 3 (emphasis in original).

Plaintiff sur-replies that the "Accused Instrumentalities here are 'dynamic and interactive [in] nature with innumerable paths a user can take to get from one page to another' " and that it is, therefore, "'unrealistic to expect plaintiffs to provide screen shots for every possible manifestation' of infringement." Dkt. No. 169 at 2 (quoting *GREE, Inc. v. Supercell Oy*, No.

---

[1] Defendants allege that the Infringement Report relies on the "List" and "Guide" buttons for the '254, '174, '003, and '255 Patents, and that it also relies on the "OK" button albeit only for the '174, '003, and '255 Patents.

219CV00311JRGRSP, 2021 WL 518462, at *1 (E.D. Tex. Feb. 11, 2021)) (emphasis and additional internal quotations omitted).

The Court finds that Defendants were put on sufficient notice and there are no new, untimely theories in Dr. Rosenberg's Report as to the "List," "Guide," and "OK" buttons. Defendants' argument that they could not have known that these new buttons/combinations were contemplated is unconvincing. Plaintiffs were using exemplars in its Infringement Contentions with there being other possibilities; those possibilities that wound up being accused in the Infringement Report were sufficiently similar. Accordingly, the Motion to Strike the "List," "Guide," and "OK" button arguments in the Rosenberg Infringement Report is **DENIED**.

### 2. "Information" / "i" Buttons

Defendants also contend that the Report's arguments regarding the "Information" / "i" buttons should be stricken because they rely on the "List" or "Guide" buttons. Specifically, they assert that the "Information" / "i" buttons only become visible after pressing the "List" or "Guide" buttons, and therefore this is a new theory for the reasons they argued in Section III.B.1 above. Dkt. No. 110 at 9-10.

Plaintiff responds that these buttons are merely a "subfunctionality" of the menu brought up by pressing the "List" or "Guide" button. Dkt. No. 120 at 9. Therefore, they were adequately disclosed for the same reasons that Plaintiff argued above. Dkt. No. 120 at 9.

The Court finds that for the reasons discussed in Section III.B.1 above, the Defendants were put on sufficient notice and that there are no new, untimely theories in Dr. Rosenberg's Report as to the "Information," or "i" buttons. Accordingly, the Motion to Strike the "Information," and "i" button arguments in the Rosenberg Infringement Report is **DENIED**.

### 3. "Input" Button

Next, Defendants contend that the Report's opinions regarding the "Input" button should be stricken. They assert that Plaintiff's Infringement Contentions only contemplate usage of the "Home" button for limitation 8[h] of the '254 Patent, but that the Report now contemplates the "Input" button. Dkt. No. 110 at 10. Their arguments for this mirror their arguments for the "List" and "Guide" buttons in Section III.B.1 above. *See supra* Section III.B.1.

Likewise, Plaintiff's arguments in its response mirror its arguments for the "List" and "Guide" buttons. *See supra* Section III.B.1.

For reasoning analogous to that in Section III.B.1 above, the Court finds that Defendants were put on sufficient notice and that there are no new, untimely theories in Dr. Rosenberg's Report as to the "Input" button. Therefore, the Motion to Strike the "Input" button opinions in the Rosenberg Infringement Report is **DENIED.**

### C. LG Channels and Prive Video Arguments

Defendants assert that the Report's opinions regarding the LG Channels and Prime Video applications should be stricken. They argue that Plaintiff's Infringement Contentions only rely on video-on-demand ("VOD") applications other than the above for limitations in the '174, '040, '384, and '527 Patents. Dkt. No. 110 at 11-12.

Plaintiff responds that its Contentions refence other, substantially similar applications such as Netflix, and that for all but the '174 Patent[2], there is language stating that the VOD's listed are merely examples of several possible pre-installed VOD applications. *See* Dkt. No. 120 at 10 (including footnote 2).

---

[2] The infringement chart in the Infringement Contentions for the relevant limitation in the '174 Patent only lists the Netflix and Youtube TV VOD applications; the language there does not indicate that there could be other, similar applications as well. *See* Dkt. No. 110-27 at 2-3.

9

Defendants reply by characterizing Plaintiff's "generic" references to Netflix[3] as an overbroad argument that Plaintiff was putting Defendants on notice of "*any* functionality within *any* available application." Dkt. No. 141 3-4 (emphasis in original).

Plaintiff sur-replies by pointing out that its Contentions were relying on VOD applications, with Netflix as an exemplar; its contentions were not, as Defendants assert, relying on *any* functionality in *any* application. Dkt. No. 169 at 3.[4]

The Court finds that the Defendants were put on sufficient notice and that there are no new, untimely theories in Dr. Rosenberg's Report as to the LG Channels and Prime Video VOD applications. As to the '040, '384, and '527 Patents: Plaintiff's use of Netflix as an exemplar with language that there could be other, similar VOD applications put Defendants on sufficient notice of LG Channels and Prime Video. As to the '174 Patent: Plaintiff once again uses Netflix (and Youtube TV) as an exemplar, but did so without language that there could be other, similar VOD applications. Consequently, the matter is a closer one. Despite this, considering the similarity of the Exemplars to LG Channels and Prime Video, the fact that Plaintiff stated that there are other such VOD applications for the '040, '384, and '527 Patents, and the totality of the circumstances, Defendants were on notice here as well. Accordingly, the Motion to Strike the LG Channels and Prime Video arguments in the Rosenberg Infringement Report is **DENIED**.

D.  New Televisions and WebOS Versions

---

[3] Defendants ignore Plaintiff's references to other VOD applications.
[4] The Parties also argue about issues related to whether the VOD applications are pre-installed, as well as the timing of dissemination of this information during discovery. The Court does not address these points here, as they are not relevant to the instant Motion.

Finally, Defendants assert that the Report's arguments regarding several of the webOS versions should be stricken. They argue that only one version—either webOS 3.5 or 5.0[5]—appears in Plaintiff's Infringement Contentions, but that the Infringement Report now accuses seven different versions: webOS 3.5, webOS 4.0, webOS 4.5, webOS 5.0, webOS 6.0, webOS 2022, and webOS 2023. *See* Dkt. No. 110 at 12-13. Defendants go on to argue that the graphics user interface layout, as well as remote control functionality, on the different versions are "markedly different" from one another. *Id.* at 13-14. Therefore, Defendants contend, the one version found in the one Infringement Contention chart is not representative of the other versions. *See id.* at 12-14.[6]

Plaintiff responds that the webOS version which appears in its Infringement Contentions is an exemplar and representative of the other versions accused. Dkt. No. 110-5 at 1 (see quoted language in footnote 5 below); Dkt. No. 120 at 3 (citing Dkt. No. 110-4 at 2). Additionally, Plaintiff supplemented its Contentions to specifically identify all webOS versions at issue. Dkt. No. 120 at 3 (citing Dkt. No. 110-24 at 3 (which identifies "webOS version 3.5, webOS version 4.0, webOS version 4.5, webOS version 5.0, webOS version 6.0, webOS version 2022, and webOS version

---

[5] The Parties appear to disagree on which version is actually present in Plaintiff's Contention chart; Plaintiff appears to believe that it is version 5.0. See Dkt. No. 110-5 at 1 ("Thus, although this claim chart includes exemplary citations and images for devices running **webOS 5.0**, the explanations of how the Accused Instrumentalities meet each limitation of the claims charted herein are substantially the same or identical for each LG TV on which any version of LG webOS was installed . . . .") (emphasis added).

[6] Defendants also argue that a plaintiff must amend its infringement contentions where two or more accused instrumentalities are running different operating systems, citing to *Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 6:19-cv-00628-ADA, Dkt. No. 31 (W.D. Tex. Apr. 29, 2020) in support of its argument. This is inapposite. As Plaintiff correctly points out, the situation in *Intellectual Tech* was two completely different operating systems—Android versus Windows—and not two (or more) different *versions* of the same operating system, as is the case here.

2023")). It argues that the differences between the different versions vis-à-vis functionality is insignificant. *Id.* at 5.[7]

The Court finds that the Defendants were put on sufficient notice and that there are no new, untimely theories in Dr. Rosenberg's Report as to the Televisions running the different versions of webOS. Plaintiff properly identified the webOS versions at issue in its Infringement Contentions. Further, Defendants have failed to show sufficient differences between the versions such that the one appearing in Plaintiff's Infringement Contentions is not representative of the others. Accordingly, the Motion to Strike the opinions in the Rosenberg Infringement Report regarding televisions running the different versions of webOS is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the Motion.

**SIGNED this 30th day of December, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[7] The Parties also dispute issues related to timing in discovery and how this may affect Plaintiff's diligence in providing notice. As Plaintiff provided sufficient notice in its Infringement Contentions (as amended) from the outset, this point is moot and the Court does not address it.