IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MULTIMEDIA TECHNOLOGIES PTE. LTD., | § § § § | |
| *Plaintiff*, | § | |
| v. | § | Case No. 2:22-cv-00494-JRG-RSP |
| LG ELECTRONICS INC. and LG ELECTRONICS USA, INC., | § § § § | |
| *Defendants*. | § | |

### MEMORANDUM ORDER

Before the Court is the Motion to Exclude the Expert Testimony of Justin Blok, filed by Defendants LG Electronics Inc. and LG Electronics USA, Inc.. **Dkt. No. 128**. For the reasons discussed below, the motion is **DENIED**.

### I.   APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. ANALYSIS

Defendants move to exclude Mr. Blok's expert testimony under a number of bases. The Court will address each one in turn.

### A. Whether Blok's Damages Methodology Is Tied to the Incremental Benefits of the Asserted Patents

#### 1. Apportionment of the Royalty Base to the Claimed Technology

In the Motion, Defendants argue that Mr. Blok did not reliably evaluate the incremental value that the patented inventions add to the end products because he relied solely on Dr. Sukumar's survey report which is supposedly faulty in this regard. Dkt. No. 128 at 8.

The Court addresses the parties' arguments on this point in the Court's Order on the Motion to Exclude the Expert Testimony of Ramamirtam Sukumar. In that Order, the Court was not convinced that Dr. Sukumar's report was unreliable on this point. Consequently, Mr. Blok's reliance on it here is not a basis to strike Mr. Blok's report.

#### 2. Mr. Blok's Reliance on Dr. Sukumar's Market's-Willingness-To-Pay Percentages in Reasonable Royalty Calculations

In the Motion, Defendants argue that Mr. Blok uses Dr. Sukumar's survey report improperly. *Id.* at 10-11. Specifically, Defendants allege that Mr. Blok misunderstood Dr. Sukumar's Market's-Willingness-To-Pay ("MWTP") percentages to be additive in arriving at a supposed final royalty rate of 50.48%. *Id.* Defendants claim that this is error and that even Dr. Sukumar said as much: " . . . it's not correct to do just a summation of [the] percentages." *Id.* at 11 (quoting Dkt. No. 127-1 at 172-73).

Plaintiff responds by asserting that Mr. Blok does not simply add together all of the MWTP percentages, nor does he attribute 50.48% of the accused products to the asserted patents. Dkt. No. 151 at 7. Plaintiff argues that Mr. Blok instead used the MWTP numbers as one factor in his final

3

determination of the royalty rates. *Id.* at 8-9.

The Court finds that there is sufficient evidence that Mr. Blok conducted his analysis with respect to the MWTP numbers in a reliable manner, such that exclusion is not merited here. Defendants' arguments on this point are best addressed via cross examination.

### B. Whether Blok Modeled the Hypothetical Negotiation on the Facts of the Case

#### 1. The Flextronics Patent Purchase Agreement

Multimedia purchased the patents being asserted in this case from Flextronics in 2022.

In the Motion, Defendants assert that Mr. Blok ignored the purchase agreement between Flextronics and Plaintiff and that this is improper because an expert must tie the hypothetical negotiation in a damages calculation to real world conditions, of which, the purchase agreement was an important facet. Dkt. No. 128 at 12 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-29 (Fed. Cir. 2009); *Apple Inc. v. Wi-LAN*, 25 F.4th 960, 974 (Fed. Cir. 2022)). They assert that Mr. Blok only "relied on the input of the patent owner's principal in assessing the probative value of the evidence rather than focus on the patents that were the focus of the litigation." *Id.* at 12-13 (citing *Wi-Lan*, 25 F.4th at 972-74 (wherein the Federal Circuit said that silence as to an agreement directed to one of the asserted patents was "troubling and [made the expert's] opinion unreliable")).

In response, Plaintiff argues that Mr. Blok did not ignore the purchase agreement but merely concluded that, after analysis, it was "not indicative of the reasonable royalty Flextronics AP and LG would have agreed to at the hypothetical negotiation." Dkt. No. 151 at 10 (citing Dkt. No. 151-2 at 36). Plaintiff points out that Mr. Blok considered "(1) the established business relationship between Flex[tronics] and Multimedia's Managing Director and sole shareholder, Mr. Proulx; (2) Flex[tronics]'s desire, but inability as a contract manufacturer, to monetize its portfolio

4

through licensing and enforcement efforts; (3) Multimedia's granting of a license to both Flex[tronics] and Apple as part of the agreement; (4) the negotiation of the purchase price, and the interests that led to the payment structure of an advance payment on future proceeds; and (5) the risks, costs, and uncertainties associated with litigation and licensing assumed by Multimedia in purchasing the patents." *Id.* at 10-11 (citing Dkt. No. 151-2 at 29-36).

Defendants reply, arguing that Mr. Blok "cherry-picked the [above] evidence" to find that the purchase agreement was not probative. They assert that "[a]n economic expert should assess the full scope of the evidence, not to look for strategic reasons to set aside the real-world indicators of value for the Patents-in-Suit." Dkt. No. 171 at 5.

Plaintiff sur-replies, arguing that "[c]learly, LG disagrees with Mr. Blok's conclusion—but that is not a basis for excluding Mr. Blok's opinion." Dkt. No. 189 at 5.

The Court agrees with Plaintiff. The issues Defendants have with Mr. Blok's analysis of the Flextronics purchase agreement go toward the credibility of Mr. Blok's damages report, not its methodology or admissibility. Such issues are best resolved by cross examination.

### 2. The Samsung License

Multimedia licensed the patents being asserted in this case to Samsung in settlement of a parallel litigation on May 28, 2024.

In the Motion, Defendants next argue that Mr. Blok also ignored the licensing agreement between Plaintiff and Samsung. Dkt. No. 128 at 13. Defendants further assert that this is "the *only license in evidence* covering the Asserted Patents . . . ." *Id.* (emphasis in original). They argue that this was squarely addressed by the Federal Circuit who said that an expert "must consider licenses that are commensurate with what the defendant has appropriated." *Id.* at 14 (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010)).

5

Plaintiff responds, arguing that Mr. Blok *did* consider the license but that, after analysis, he concluded it was also not indicative of the reasonable royalty that Defendants would agree to in a hypothetical negotiation. Dkt. No. 151 at 12-13, 14 (citing Dkt. No. 151-2 at 40). Plaintiff points out that Mr. Blok considered, inter alia, "(1) the longstanding relationship between Samsung and Mr. Proulx; (2) the significance of potential litigation costs and risks between Multimedia and Samsung related to the Patents-in-Suit; (3) the influence of other negotiations between Mr. Proulx and Samsung regarding other patent portfolios that were taking place at the same time; and (4) the "first licensee discount" that Multimedia was willing to give Samsung in exchange for an agreement." *Id.* at 12-13 (citing Dkt. No. 151-2 at 38-40). Plaintiff argues that "None of these considerations would be present in the hypothetical negotiation between Flextronics and LG—a negotiation between two different parties that would have taken place almost a decade prior to the negotiation of the Multimedia / Samsung agreement." *Id.* at 13.

Defendants' reply and Plaintiff's sur-reply mirror those found in Section II.B.1 above. *See* Dkt. No. 171 at 5; Dkt. No. 189 at 5.

The issues Defendants have with Mr. Blok's analysis of the Samsung License again go toward the credibility of Mr. Blok's damages report, not its methodology or admissibility. Such issues are best resolved by cross examination.

### 3. The Jamdeo Commercialization Efforts

Lastly in the Motion, Defendants argue that Mr. Blok also ignored Flextronics and Hisense's joint venture to commercialize a TV product they named VIDAA[1], which failed in 2018 and, thus, would have been known to Flextronics by the time of a hypothetical negotiation in 2017.

---

[1] Defendants appear to assert that the Jamdeo joint venture's failure is relevant because two of Jamdeo's employees are named inventors for the patents asserted in the instant case.

Dkt. No. 128 at 4-5, 14. Defendants assert that by not consulting evidence pertaining to Jamdeo's failure, Mr. Blok failed to consider the "real world strengths and weaknesses of the two parties to the hypothetical negotiation." *Id.* at 15.

Plaintiff responds, arguing that Mr. Blok did address why he chose not to reference Jamdeo or VIDAA in his report: he did not believe that it was relevant since it concerned "a software product that was developed for Hisense and Hisense TVs prior to the issuance of the patents-in-suit." Dkt. No. 151 at 14 (quoting Dkt. No. 151-5 at 101). Plaintiff contends that, because Jamdeo would not be a party to the hypothetical negotiation, Mr. Blok did not err in his analysis concluding that Jamdeo would not be relevant. *Id.* at 14-15.

Defendants' reply and Plaintiff's sur-reply mirror those found in Section II.B.1 above. *See* Dkt. No. 171 at 5; Dkt. No. 189 at 5. For the same reasons discussed above, this argument fails.

### III. CONCLUSION

For the reasons discussed above, the motion is **DENIED**.

**SIGNED this 6th day of February, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

7