IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MULTIMEDIA TECHNOLOGIES PTE. LTD., <br><br>*Plaintiff*, <br><br> v. <br><br> LG ELECTRONICS INC. and LG ELECTRONICS USA, INC., <br><br>*Defendants*. | § § § § § § § § § § § <br><br> Case No. 2:22-cv-00494-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is the Motion to Exclude the Expert Testimony of Ramamirtam Sukumar, filed by Defendants LG Electronics Inc. and LG Electronics USA, Inc.. **Dkt. No. 127**. For the reasons discussed below, the Motion is **DENIED**.

### I.    APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. ANALYSIS

Defendants move to exclude Dr. Sukumar's expert testimony on a number of bases. The Court will address each one in turn.

### A. Mr. Blok's Reliance on Dr. Sukumar's Market's-Willingness-To-Pay Percentages in Reasonable Royalty Calculations

In the Motion, Defendants argue that Mr. Blok—Plaintiff's damages expert—is the only person to use Dr. Sukumar's survey report, and that Mr. Blok uses it improperly. Dkt. No. 127 at 6. Specifically, Defendants allege that "Mr. Blok misunderstood Dr. Sukumar's MWTP [, Market's-Willingness-To-Pay,] percentages to be additive . . ." in arriving at a supposed final royalty rate of 50.48%. *Id.* at 8 (emphasis omitted). Defendants claim that this is error and that even Dr. Sukumar ostensibly said as much: " . . . it's not correct to do just a summation of [the] percentages." *Id.* (quoting Dkt. No. 127-1 at 172-73). Accordingly, Defendants assert that because Mr. Blok, and only Mr. Blok, uses Dr. Sukumar's report and because he did so incorrectly, Dr. Sukumar's report is "wholly irrelevant" and, therefore, unhelpful to the jury. *See id.* at 6.

As discussed in the Court's Order on the Motion to Exclude the Expert Testimony of Justin Blok, the Court is not convinced that Mr. Blok misapplies information taken from Dr. Sukumar's survey report. Accordingly, the Court finds that Dr. Sukumar's report is not irrelevant and should not be excluded on that basis.

### B. "Features-of-Interest" as a Proxy for Incremental Benefits

Dr. Sukumar grouped the asserted patents into several groups on the basis that they are directed to a particular feature that would be of interest to a consumer.

Defendants contend that Dr. Sukumar attempts to use his "features-of-interest" as a proxy for incremental benefits, but that his "failure to employ reliable principles and consider sufficient facts when designing his survey renders his analysis too attenuated from the claimed inventions to

3

be admitted." *Id.* at 9. They forward a number of arguments in support of this contention, which the Court will take up in turn.

### 1. Whether the Features-of-Interest Appropriately Represent the Incremental Benefits

In the Motion, Defendants argue that Dr. Sukumar drafted his survey such that there is a disconnect between the incremental benefits, and the features and their explanations, with the latter presented in lay terms ("consumer speak"). *Id.* Defendants argue that the feature descriptions "do not convey the full import of [the] 'incremental benefits' Dr. Sukumar identifies" (*Id.* (citing Dkt. No. 127-6)), with the descriptions of the incremental benefits having substantially more text than the feature descriptions (*Id.*).

Next, Defendants argue that Dr. Sukumar included a now invalid patent (the '168 Patent) and two unasserted patents in a parallel litigation (involving VIZIO) in the features-of-interest in his survey. *Id.* at 9-10. They contend this untethers the features-of-interest from the incremental benefits provided by the patents still asserted. *See id.* at 10.

Plaintiff responds to Defendants' first point by disputing that the consumer-speak description fails to properly capture the incremental benefits, arguing that they are sufficiently tied. Dkt. No. 152 at 8-10. Further, they assert that, regardless of the aforementioned, Defendants have not offered any testimony competent to assess "whether Dr. Sukumar properly translated the technical benefits of the asserted patents into consumer-facing survey questions." *Id.* at 8. Plaintiff contends that this means that the dispute is now one for the jury and that Defendants' "alleged defects are nothing more than fodder for cross examination." *Id.*

Plaintiff responds to Defendants' second point by arguing that the VIZIO patents only go toward a separate feature-of-interest, which is not at issue here. *Id.* at 10-11 (citing Dkt. No. 127-2 at 19-22; Dkt. No. 127-6 at 9-10). Further, they argue that Dr. Sukumar's feature descriptions

4

are broad enough to still encompass the now invalid '168 patent, as well as other potential unasserted patents; thus, because consumers were asked about features and not individual patents, the exclusion or inclusion of one such patent would not skew the analysis. *See id.* (citing Dkt. No. 152-6 at 123-25). Finally, they assert that the breadth of Dr. Sukumar's report is fodder for cross examination, and that exclusion is inappropriate. *See id.*

As to the first point, the Court agrees with Plaintiff. As this Court has previously said, a defendant's dissatisfaction with the description of the patented features in the survey goes to the weight of the evidence, not its admissibility.

As to the second point, the Court again agrees with Plaintiff, at least insofar as Defendants' raised disputes are best addressed with cross examination.

**2. Whether the Survey Report Included the Input of Persons of Skill in the Art**

In the Motion, Defendants assert that Dr. Sukumar prepared his survey without any input from a person of skill in the art ("POSA"), and that Dr. Sukumar lacked the necessary skill to do so without a POSA. Dkt. No. 127 at 10-11. Specifically, they allege that he admitted that he lacked qualifications to be able to provide a technical understanding of the asserted patents, but that he nonetheless took the technical language in the patents and translated it into consumer speak without help from a POSA. *Id.* (citing 127-1 at 65; 114).

Plaintiff responds by arguing that Dr. Sukumar's supposed admission is Defendants' attempt to leverage nothing more than an out-of-context "gotcha" question and that Defendants ignore the broader testimony showing that Dr. Sukumar collaborated with Plaintiff's technical expert, Dr. Rosenberg, in the creation of the survey. Dkt. No. 152 at 11-12 (citing Dkt. No. 152-6 at 62; 67).

Defendants reply, asserting that "Dr. Rosenberg" appears nowhere in the Dr. Sukumar's report, that there is no support in the record for Plaintiff's assertion that Dr. Rosenberg participated in the construction of Dr. Sukumar's survey, and that Dr. Sukumar never exchanged written materials with Dr. Rosenberg. Dkt. No. 172 at 1-3.

Plaintiff sur-replies, arguing that Defendants' assertions are unsupported by the deposition testimony, that the deposition testimony shows that Dr. Sukumar "repeatedly described his conversations with Dr. Rosenberg as an 'input' to his survey design," and that exchanges between Dr. Sukumar and Dr. Rosenberg occurred, at minimum, orally. Dkt. No. 188 at 1-3 (citing Dkt. No. 127-2 at 61-67).

The Court, having reviewed the record, is of the opinion that there is sufficient evidence that Dr. Sukumar's report included input from a POSA in the form of Dr. Rosenberg. Accordingly, it lays a sufficiently reliable technical foundation and should not be stricken.

### 3. Whether there is a Basis for the Jury to Determine the Value of Individual Patents or Combinations of Asserted Patent Groups

In the Motion, Defendants argue that Dr. Sukumar's report calculates the collective value of several individual patents grouped together into 'features,' and not the value apportionable to individual patents. Dkt. No. 127 at 11-12. Consequently, they assert, the jury has no basis to determine the value of an accused product which is found to infringe fewer than all the patents within a feature group. *See id.* at 12.[1]

Plaintiff responds, arguing that its experts have consistently taken the position that each individual patent in a given group provides the "same or similar core benefits to [Defendants]."

---

[1] Defendants also argue that the jury as no basis to determine the value of an accused product which is found to infringe multiple feature patent groups. Their arguments for this mirror those they make in Section II.A above. As with the Section II.A arguments, the Court resolves these in the Order on the Motion to Exclude the Expert Testimony of Justin Blok.

6

Dkt. No. 152 at 13 (quoting Dkt. No. 152-4 at 26-27) (internal quotes omitted). Consequently, "'the benefits provided by each of the patents within a patent group provides similar benefits to LG such that the damages would be the same if any one of those patents is alleged to be valid and infringed,' and that for each group, 'you would only count that value once.'" *Id.* (quoting 152-5 at 109-110). Plaintiff argues that this is one reason why the patents were grouped together as they were. *Id.* Thus, Plaintiff concludes, the fact "that Dr. Sukumar's survey calculates [. . .] values at the feature or benefit level does not prevent the fact-finder from determining the value of any individual patent." *Id.*

Defendants have not shown that this methodology in unreliable.

### C. Whether Dr. Sukumar Relied on Information Discovered in the LG and VIZIO Litigations

In the Motion, Defendants argue that Dr. Sukumar "blinded himself to virtually all relevant facts from both this case and [Plaintiff's] parallel litigation with VIZIO" regarding consumer preferences in smart TVs. Dkt. No. 127 at 13. Consequently, his survey report is wholly deficient vis-à-vis the calculated MWTP values, because he is not an expert in the market of smart TVs and therefore has no basis to render industry-specific opinions, which he did by (1) stating that pricing is stable in this market, and (2) by including only a single distractor factor which he opines is similar in value to the features-of-interest. *Id.* at 13-14. Defendants argue that because these criteria pervade his analysis, this merits wholesale exclusion of his report. *Id.* Defendants also complain that Dr. Sukumar should have included additional distractor features such as screen size, sound quality, warranties, et cetera. *See id.* at 14-15.

Plaintiff responds, first by arguing that questions regarding the correctness and credibility of Dr. Sukumar's report go to the jury. Dkt. No. 152 at 14 (citing *Estech Systems IP, LLC v. Carvana, LLC*, 2023 WL 2934920 (E.D. Tex. Apr. 13, 2023)). As to Dr. Sukumar's basis for

7

offering industry-specific opinions, Plaintiff argues that he "explained that he relied upon his own extensive experience and expertise conducting conjoint surveys, as well as his related experiences conversing with consumers, and his academic understanding of the market." *Id.* at 15 (citing Dkt. No. 152-6 at 179, 184-86). As to Dr. Sukumar's inclusion of only one distractor feature, Plaintiff counters that Defendants ignore the nature of the survey which "asks the consumer to consider that all non-tested features (such as screen size, picture quality, etc.) are constant." *Id.* at 14 (citing Dkt. No. 152-6 at 45-46). Thus, argues Plaintiff, the survey accounts for these features. Further, it argues that several courts have approved of using similar ratios of accused features to distractor features. *Id.* at 14-15 (citations omitted).

The Court agrees with Plaintiff, at least insofar as Defendants' raised disputes are best addressed with cross examination. As before, the issues Defendants raise here go towards the credibility of Dr. Sukumar's report, not its admissibility. Dr. Sukumar relied on sufficiently reliable bases to opine as he did, such that his report does not merit exclusion. As to the single distractor feature, whether Dr. Sukumar should have included more is a matter for the jury to weigh.

### III.   CONCLUSION

For the reasons discussed above, the Motion is **DENIED**.

**SIGNED this 7th day of February, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE